IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 MAR 30 PM 8:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 31 2003

| | |
|---|---|
| JAMES WILSON, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number<br>) 00-C-1811-S |
| TUSCALOOSA COUNTY, ALABAMA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff James Wilson, a black citizen of the United States, began his employment with Defendant Tuscaloosa County's Road and Bridge Department ("RBD") on May 2, 1977, as an Operator II. Since then, he has been classified as an Operator III. The Operators II and III are responsible for the operation of heavy equipment in the building and maintenance of roads and bridges in Tuscaloosa County ("the County").

Operators III are generally assigned to specific pieces of equipment. They regularly operate the specific equipment to which they have been assigned. Those Operators III not assigned to specific equipment are called "utilitymen" and assigned as needed to operate varied equipment for certain periods of time.

There are two principal work groups or camps of RBD: 1) the Coker Camp, which works north of the Warrior River, and 2) the Samantha Camp, which works south of the river.

Although Wilson lives closer to Samantha, he was assigned to work at the Coker Camp for

most of his tenure with the County. Although he had requested to transfer to Samantha, but his requests were declined.

When two new motor graders were purchased by RBD a few years ago, one was assigned to Wilson at the Coker Camp and the other was assigned to white Operator III James Tierce at the Samantha Camp.

In 2002, Pierce requested a transfer to the Coker Camp. Superintendent Larry Wilburn granted the request. Tierce was permitted to transfer and to carry with him to Coker the motor grader to which he had been assigned at Samantha.

Two months after Tierce's transfer to the Coker Camp had been effectuated, Wilburn granted Wilson transfer request to the Samantha Camp. Inexplicably, Wilson was not allowed to carry his motor grader to Samantha. The Court finds that Wilburn refused to permit Wilson to carry his assigned motor grader to Samantha Camp because of Wilson's race.

At Samantha, Wilson has been assigned various laborer jobs; occasionally he is assigned a utilityman position. Unlike any other Operator III at Samantha and Coker, Wilson has not been assigned to a single piece of equipment since his transfer to Samantha. Wilson is the only black Operator III employed by RBD. All of the white Operators III have been assigned to one primary piece of equipment for which they are responsible. The Court finds that Wilburn has failed to assign Wilson to a specific piece of equipment at Samantha because of Wilson's race.

For those who are unaccustomed to operating the drot excavator, it is a dangerous and thus stressful assignment. On the other hand, the two Operators III regularly assigned to the drot prefer it over other assignments. One of the Samantha utilityman positions assigned to Wilson was that of drot operator. Wilson protested this assignment because of his inexperience on the machine and

2

because of the physical condition of his arm at the time, but to no avail. Wilburn was unrelenting in this assignment - but apparently recognizing the inherent dangerousness of placing Wilson on the machine at the job site, Wilburn himself operated it until Wilson gained some experience on the machine. White Operators III have never been assigned to operate the drot against their wishes. In fact, Tierce has boasted: "my behind has never hit the seat of the drot and it's never going to hit it." The Court finds that Wilburn assigned Wilson to operate the drot against his will because of Wilson's race.

On November 8, 1999, Wilson filed a charge of discrimination against RBD with the Equal Employment Opportunity Commission ("EOC"). Among other things, he alleged racial discrimination in pay, promotions, discipline, and in the terms and conditions of his employment.

At the time the EEOC charge was filed and prior to that time, white parttime employees were assigned to operate equipment while Wilson was working as a laborer. Wilson was assigned to labor work, rather than other equipment, when his motor grader (i.e., paving) work ran out. After receiving the EEOC charge, RBD assigned a single black parttime employee to operate equipment.

The Court concludes that because of his race, Wilson, a fulltime equipment operator, was occasionally assigned to work as a laborer while parttime employees were assigned to operate equipment. This discrimination continued past April 1999.

Based on the findings embodied in this Opinion, the Court concludes that RBD has intentionally subjected Plaintiff to disparate terms and conditions of employment because of his race.

While the racially disparate conditions did not implicate Plaintiff's compensation, more

likely than not they resulted in mental anguish. But because Plaintiff's counsel did not comply with the Pretrial Order, Plaintiff may not be awarded mental anguish damages against the wrongdoer RBD. On application from Plaintiff, however, he will be entitled to a portion of his attorney's fee as damages.

The Court will otherwise grant the appropriate relief.

Done this ___30th___ day of March, 2003.

                                                                       Chief United States District Judge
                                                                       U.W. Clemon